(C. D. 952)

E. H. CORRIGAN *v.* UNITED STATES

United States Customs Court, First Division

(Decided October 10, 1945)

*Elmore H. Borchers* for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Richard H. Welsh*, special attorney), for the defendant.

Before OLIVER and COLE, Judges

OLIVER, Presiding Judge: Certain so-called mahogany "flitches" were imported into the United States from Mexico at the port of Laredo, Tex., and were assessed with duty at the rate of 7½ per centum ad valorem under the provisions of paragraph 404 of the Tariff Act of 1930, as modified by the provisions of the trade agreement with the United Mexican States, T. D. 50797, which read as follows:

Mahogany, in the form of sawed boards, planks, deals, and all other forms not further manufactured than sawed, and flooring.

In addition to the foregoing assessment, a tax at the rate of $1.50 per thousand feet, board measure, was imposed under the provisions of section 3424 of the Internal Revenue Code (title 26, U. S. Code) as modified by the Canadian Trade Agreement, T. D. 49752. No claim is made in connection with the assessment under the Internal Revenue Code, and it will not be further discussed.

The protest claim in each case is for entry free of the normal duties assessed under the Tariff Act of 1930 on the ground that the merchandise is properly classifiable under paragraph 1803 thereof, which, so far as pertinent, reads as follows:

PAR. 1803. Wood:
(1) Timber hewn, sided, or squared, otherwise than by sawing, * * * sawed lumber and timber, not further manufactured than planed, and tongued and grooved; all the foregoing not specially provided for: * * *
(2) Logs; timber, round, unmanufactured * * * all the foregoing not specially provided for.

There is no dispute about the facts. After the trees were felled in Mexico the bark was removed, and the trunks were cut into logs 8 to 12 feet long. The larger sized logs were then sawed lengthwise; first in halves and then in quarters. The smaller sized logs were sawed only in halves.

At an angle of 135° to the straight sides of the quartered logs, at the point where the sawed surfaces met the circular part, an edge 3 to 5 inches wide was made by the use of an adze. The reason for placing these edges, which are, of course, parallel with each other, on the logs is connected with operations performed on the logs subsequent to importation in veneer factories. It seems that one edge is bolted to the veneering machinery; and the veneers are sliced from the other

edge. Similar parallel edges were put on the half logs for the same purpose.

It was admitted by one of the owners of the company which processed and imported the "flitches" and half logs in question that the edges were put on by the use of an adze mainly for the purpose of meeting the requirements of the tariff language, and that from the standpoint of the veneer manufacturing operations the edges could have been put on with a saw. It is, however, well settled that one may process or manufacture his merchandise before importation so as to take advantage of the most favorable provision of the tariff law; hence no consideration need be given to that feature of the matter.

In our opinion, the articles at bar are not properly classifiable under paragraph 404, *supra*, for either of two reasons: First, we are of opinion that the designation "all other forms" refers to forms of the character of the enumerated forms preceding it; namely, boards, planks, and deals, and not to merchandise such as that at bar which in its essence is merely quartered and halved logs. This view is in conformity with the administrative practice of the Treasury Department as shown by its abstract published in T. D. 45803 (3) (62 Treas. Dec. 62). It is true that two smooth, parallel edges were put on the logs with an adze, but this did not confer upon them a form comparable to boards, planks, and deals.

Second, even if it be considered that such quartered and halved logs might be classifiable under paragraph 404 as a form of sawed mahogany, nevertheless the merchandise at bar is without the scope of the paragraph for the reason that it has been "further manufactured than sawed" because of the edges put on with the adze.

In the brief filed on behalf of the plaintiff classification under paragraph 1803 (1) as "sawed lumber and timber, not further manufactured than planed, and tongued and grooved" is urged for the merchandise at bar.

In *United States* v. *Dixie Veneer Co., Inc., Hipage Co.*, 32 C. C. P. A. (Customs) 75, C. A. D. 288, the merchandise consisted of quartered and halved logs which had the bark, the sapwood directly underneath, and heart, as well as rotted, worm-eaten, or imperfect sections trimmed off. No question of the classification of the merchandise under the provisions of the Tariff Act of 1930 was raised in that case, but the issue was confined to the question whether the term "sawed timber" as used in section 3424 of the Internal Revenue Code embraced such merchandise. The Court of Customs and Patent Appeals held that that term as used in the said code referred to squared, sawed timber, and did not include the articles there involved, which, incidentally, were called "flitches" and "half logs." Since consistency would require that the same interpretation be put on the term "sawed timber" as used in paragraph 1803 (1) of the Tariff Act of 1930, it would appear that the merchandise at bar is excluded from that classification.

We are satisfied, however, that the so-called flitches and half logs in issue, are entitled to free entry under paragraph 1803. If it be considered that they have not reached the state of being timber, then they are classifiable under the provision for "logs" in paragraph 1803 (2). If they have reached the state of being timber, and are, as has been shown, excluded from the provision for "sawed timber," then they are classifiable under the provision for "Timber hewn   *   *   * otherwise than by sawing" in paragraph 1803 (1) by reason of the edges hewn by the adze.

Our view is supported by a consideration of the legislative history of the provisions for cabinet woods. In paragraph 403 of the Tariff Act of 1922 there was a provision for such woods "in the log" at 10 per centum, and "in the form of sawed boards, planks, deals, and all other forms not further manufactured than sawed" at 15 per centum. In the hearings before the Committee on Ways and Means of the House of Representatives in 1929 on the proposed tariff revision, various persons appeared advocating removal of the duty on such woods in the log on the ground that none of those woods grow in the United States and hence there was no element of protection involved, while the revenue derived was extremely small in comparison with the difficulties imposed upon both the importer and the Government in connection with its collection. (See "Hearings Before the Committee on Ways and Means, House of Representatives, 70th Cong. 2nd Sess.," pp. 2714–2726.)

At page 2726, Mr. Treadway, ranking member of the committee, indicated that the inclusion of mahogany on the dutiable list under the Tariff Act of 1922 was a "serious blunder" and that he hoped "we can correct it when we prepare this new bill."

It will be noted that the advocates of repealing the duty on cabinet woods in the log were speaking of their raw material, which is essentially the character of the merchandise at bar.

The bill as introduced in the House retained the duty on cabinet woods in the log, and it was passed in the form in which it was introduced on May 28, 1929.

In June 1929 at the hearings before a subcommittee of the Senate Finance Committee (71st Cong., 1st sess., vol. IV, pp. 266–279), the same people who had appeared before the House committee made similar statements to the subcommittee. In the confidential committee print under date of August 19, 1929, the words "in the log" were stricken from the bill, and on page 20 of Senate Report 37 thereon, the Finance Committee reported as follows:

The changes made by the Finance Committee in Schedule 4 *consist chiefly of transfers to the free list of such classes of lumber or logs as constitute raw materials for use in domestic manufactures,* or which are building materials largely used in agricultural districts.

The former class includes * * * logs of various species of cabinet wood * * *.

Logs of cabinet woods are not produced in the United States. The domestic sawmills producing mahogany and other cabinet wood lumber, veneers, and other products are entirely dependent upon imported logs. [Italics added.]

The bill passed the Senate in the form in which it now appears as the Tariff Act of 1930, and the change was agreed to by the House.

We think the foregoing demonstrates the congressional intention to make raw material for mahogany veneer such as that here involved free of duty.

The claim in each of the protests for free entry under paragraph 1803 is therefore sustained, and judgment will issue accordingly.